1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8

9

10

11

12

13

14

15

16

17

OLGA C.,

              Plaintiff,

      v.

COUNTY OF SANTA CLARA, SANTA
CLARA COUNTY SOCIAL SERVICES
AGENCY, DEPARTMENT OF FAMILY
AND CHILDREN SERVICES, JANET
TRUJILLO, individually and as an employee
of the COUNTY OF SANTA CLARA,
DARLENE SANDOVAL, individually and
as an employee of the COUNTY OF SANTA
CLARA, and DOES 1 through 20, inclusive,

           Defendants.

Case No.  5:15-cv-01691-EJD

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

Re: Dkt. No. 15

18

      Plaintiff Olga C. ("Plaintiff") filed the instant civil rights action against Defendants County

19

of Santa Clara ("County"), Santa Clara County Social Services Agency ("Social Services

20

Agency"), Department of Family and Children Services ("Family and Children Services"), and

21

social workers Janet Caudillo ("Caudillo") (erroneously sued as Janet Trujillo) and Darlene

22

Sandoval ("Sandoval") (collectively, "Defendants") alleging constitutional rights violations under

23

42 U.S.C. § 1983.  Presently before the court is Defendants' Motion to Dismiss pursuant to

24

Federal Rule of Civil Procedure 12(b)(6).  See Mot., Dkt. No. 15.

25

      Federal jurisdiction arises pursuant to 28 U.S.C. § 1441(a).  Having carefully considered

26

the parties' briefing along with oral argument, the court GRANTS IN PART AND DENIES IN

27

28

Case No.: 5:15-cv-01691-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

PART Defendants' Motion to Dismiss for the reasons explained below.

## I.   BACKGROUND

### A.   Factual Background

The facts in this case involve the circumstances that led to the severe abuse suffered by six-year-old Jane Doe.  Plaintiff is the mother of five children, including Jane Doe.  Compl., Dkt. No. 1-1 at ¶ 8.  Jerry Paredes, Sr. ("Jerry Sr.") is the father of Jane Doe who allegedly has a history of domestic violence and has been convicted of child endangerment.  Id. at ¶ 9.  Jerry Sr. is married to Deanne Paredes ("Deanne"), and is the father of their two adult children Krystal Paredes ("Krystal") and Jerry Paredes, Jr. ("Jerry Jr.").  Id.  While Deanne, Krystal, and Jerry Jr. all live in the same home in San Jose, California (the "Paredes home"), it is unknown where Jerry Sr. lives. Id.  Nonetheless, Jerry Sr. is alleged to have frequented the Paredes home.  Id.

As of 2013, Plaintiff allegedly had sole legal and physical custody of Jane Doe while Jerry Sr. had unsupervised visitation.  Id. at ¶ 10.  Plaintiff alleges that in April 2013, Jane Doe went to a baseball game in San Francisco with Jerry Sr., and spent the night in the Paredes home per the visitation schedule.  Id. at ¶ 11.  When Plaintiff saw Jane Doe the following day, she noticed that Jane Doe had a blackened eye.  Id.  Jane Doe stated that Jerry Sr. hit her.  Id.  Plaintiff photographed Jane Doe and contacted Child Protective Services seeking to limit Jerry Sr.'s visitation rights.  Id.

In May 2013, Plaintiff alleges that she met with Caudillo, a social worker employed by the County, and told Caudillo about Jane Doe's blackened eye.  Id. at ¶¶ 4, 12.  Plaintiff allegedly alerted Caudillo of her suspicion that Jane Doe was injured in the Paredes home, and asked Caudillo to investigate.  Id. at ¶ 12.  Caudillo allegedly focused her investigation on Plaintiff, and asked the children about Plaintiff's conduct concerning the use of alcohol and drugs, and having men in the home.  Id. at ¶ 13.  Plaintiff alleges that Caudillo presented her with papers to sign, and when Plaintiff refused to immediately sign the papers due to her limited English proficiency and inability to understand what the papers were, the County took Plaintiff's children and placed them

Case No.: 5:15-cv-01691-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

1    in foster homes.  <u>Id</u>.  Jane Doe was placed in the Paredes home.  <u>Id</u>. at ¶ 14.

2        Plaintiff alleges that pursuant to County policy, foster children are placed with relatives

3    without conducting a thorough background check.  <u>Id</u>. at ¶¶ 15, 32.  She alleges that when Jane

4    Doe was placed in the Paredes home, no background check was performed to determine whether

5    that was a suitable placement.  <u>Id</u>.  Given Jerry Sr.'s violent nature and the criminal history of both

6    Jerry Sr. and Deanna, Plaintiff feared for Jane Doe's safety in the Paredes home.  <u>Id</u>. at ¶¶ 15-16.

7    Moreover, even though Jerry Sr. had supervised visitation rights and restraining orders had been

8    issued against him, Jane Doe's placement in the Paredes home allowed Jerry Sr. to have unfettered

9    access to Jane Doe, which concerned Plaintiff.  <u>Id</u>. at ¶¶ 16-17.  Plaintiff further alleges that 21-

10   year-old Krystal was named Jane Doe's foster parent even though she was unfit for such a role.

11   <u>Id</u>. at ¶¶ 16, 18.  Plaintiff alleges that at all times she protested the removal of her children from

12   her home and protested the placement of Jane Doe in the Paredes home.  <u>Id</u>. at ¶ 19.

13       In late 2013 or early 2014, Plaintiff was informed that Sandoval was the new social worker

14   assigned to Jane Doe's matter.  <u>Id</u>. at ¶ 20.  Plaintiff allegedly met with Sandoval to discuss how

15   she might regain custody of her children, and Sandoval allegedly provided misguided information

16   about required parenting classes.  <u>Id</u>.

17       During the course of Jane Doe's placement in the Paredes home, Plaintiff was allowed

18   supervised visitations with Jane Doe once a week for four hours.  <u>Id</u>. at ¶ 21.  In early 2014, during

19   one of these visitations, Plaintiff began to notice that Jane Doe's body had cuts and bruises.  <u>Id</u>. at

20   ¶ 22.  When Plaintiff allegedly reported this to Sandoval, Sandoval refused to listen to Plaintiff

21   and dismissed her concerns.  <u>Id</u>.  In March 2014, during a visitation with Plaintiff and her five

22   children, the other foster parents in the room also noticed the cuts, bruises, swelling, and

23   blackened eyes and marks on Jane Doe's body, and reported this to Defendants.  <u>Id</u>. at ¶ 23.

24   Plaintiff alleges that the limited investigation conducted by Defendants was negligent and

25   incomplete because they took the word of Deanne and Krystal, who were the suspected abusers,

26   when they stated the injuries were self-inflicted or the result of a cold and/or allergies.  <u>Id</u>. at ¶¶

27

28   Case No.: <u>5:15-cv-01691-EJD</u>
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
     MOTION TO DISMISS

United States District Court
Northern District of California

23, 25.  Plaintiff further alleges that when Defendants' efforts to see Jane Doe were thwarted by excuses offered by the Paredes family, Defendants would stop their investigation.  Id. at ¶ 25.  The marks on Jane Doe's body allegedly consisted of collar bruise marks around her neck, human bite marks on her body, black eyes, swollen nose and lips, missing teeth, and scabbed-over abrasions and bruises.  Id.  Between March and June 2014, on multiple occasions, Plaintiff allegedly met with Sandoval to discuss her concerns of child abuse towards Jane Doe and showed Sandoval pictures that Plaintiff had taken of Jane Doe's injuries, but Sandoval dismissed her.  Id. at ¶ 24.

In May 2014, Plaintiff was unable to see Jane Doe because Krystal allegedly claimed she forgot to take Jane Doe to the visitations, or claimed another excuse.  Id. at ¶ 26.  Thus, on June 6, 2014, Plaintiff met with the new social worker assigned to the Jane Doe matter and pleaded that the social worker intervene because she feared for her daughter's life.  Id. at ¶ 27.  On two occasions, the social worker scheduled visitations between Plaintiff and Jane Doe, and each time, Krystal failed to bring Jane Doe.  Id. at ¶ 28.  Plaintiff reported the failed visitations to the social worker.  Id. at ¶¶ 28-29.

On June 10, 2014, the social worker visited the Paredes home.  Id. at ¶ 29.  Upon observing suspicious circumstances, the social worker told Krystal to immediately take Jane Doe to a doctor. Id.  Hours later, Krystal took Jane Doe to a doctor, and Jane Doe was immediately transported to Valley Medical Center where she was hospitalized for days.  Id.  Plaintiff alleges that upon admission to Valley Medical Center, Jane Doe had severe brain hemorrhaging and was beaten beyond recognition.  Id. at ¶ 30.  Her eyes were swollen shut, she had bite marks where chunks of flesh were missing, spike marks around her neck, missing teeth, and cuts and bruises all over her body.  Id.  Jane Doe was subsequently removed from the Paredes home, and the Paredes family have been criminally charged.  Id. at ¶ 31.

### B.   Procedural History

In March 2015, Plaintiff commenced the instant action in the Santa Clara County Superior Court.  See Compl.  In April 2015, Defendants removed the action to federal court because of the

Case No.: 5:15-cv-01691-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

federal constitutional rights claims asserted by Plaintiff.  See id.  In her complaint for damages,

Plaintiff asserts the following claims: (1) violation of civil rights, pursuant to 42 U.S.C. § 1983;

(2) Monell-related claims; (3) violation of state civil rights; and (4) intentional infliction of

emotional distress.  See id.  In June 2015, Defendants filed the instant Motion to Dismiss.  See

Mot.  The matter was fully briefed, and oral argument was held on September 17, 2015.  See

Opp'n, Dkt. No. 19; Reply, Dkt. No. 20; Dkt. No. 27.

Separate from the instant action, Jane Doe is pursuing her own lawsuit against Defendants

through a guardian *ad litem* entitled Jane Doe v. County of Santa Clara et al., Case No. 5:15-cv-

01725-EJD (the "Jane Doe Action"), which is before the undersigned.  In the Jane Doe Action,

Jane Doe asserts the following claims against Defendants: (1) negligence—failure to discharge

mandatory duty; (2) violation of civil rights, pursuant to § 1983; (3) Monell-related claims; (4)

violation of state civil rights; (5) negligence—premises liability; (6) failure to report under child

abuse and neglect reporting law; and (7) intentional infliction of emotional distress.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (internal quotations omitted).  A

complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is

appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

a cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th

Cir. 2008).  Moreover, the factual allegations "must be enough to raise a right to relief above the

speculative level" such that the claim "is plausible on its face."  Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider

any material beyond the pleadings."  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d

1542, 1555 n.19 (9th Cir. 1990).  However, the court may consider material submitted as part of

Case No.: 5:15-cv-01691-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

1   the complaint or relied upon in the complaint, and may also consider material subject to judicial

2   notice.  See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

3          In addition, the court must generally accept as true all "well-pleaded factual allegations."

4   Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  The court must also construe the alleged facts in the

5   light most favorable to the plaintiff.  Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988).

6   However, "courts are not bound to accept as true a legal conclusion couched as a factual

7   allegation."  Id.

8   **III.    DISCUSSION**

9          **A.    Standing to Assert a § 1983 Claim**

10          Defendants move to dismiss Plaintiff's § 1983 claim on the basis that she lacks standing to

11   sue.  Mot. at 8.  Under § 1983, a plaintiff may bring forth an action for the "deprivation of any

12   rights, privileges, or immunities secured by the Constitution and laws" of the United States.  "To

13   state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured

14   by the Constitution or laws of the United States was violated, and (2) that the alleged violation

15   was committed by a person acting under the color of State law."  Long v. Cnty. of Los Angeles,

16   442 F.3d 1178, 1185 (9th Cir. 2006).

17          In the instant action, the ground for Plaintiff's § 1983 claim is the violation of due process

18   under the Fourteenth Amendment, whereby Plaintiff alleges that Defendants interfered with her

19   constitutional right to familial association.  Compl. at ¶ 35.  Since it is undisputed that the alleged

20   violation was committed by government actors, thus satisfying the second element, the court will

21   only address the first element: whether Plaintiff adequately pled that a constitutional right was

22   violated.

23          **i.    Existence of a Constitutional Right**

24          The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty,

25   or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Here, Plaintiff argues that

26   she has a constitutional right to familial association, providing her with the liberty interest of

27

28   Case No.: 5:15-cv-01691-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
     MOTION TO DISMISS

United States District Court
Northern District of California

6

associating with her child, Jane Doe.  Opp'n at 11.  Defendants do not appear to dispute that such a liberty right exists.

Indeed, the Ninth Circuit has held that a parent possesses a constitutionally protected liberty interest in the companionship and society of her children, and such a liberty interest is cognizable under § 1983.  Kelson v. City of Springfield, 767 F.2d 651, 653-54 (9th Cir. 1985).  Accordingly, Plaintiff has sufficiently pled a cognizable liberty interest giving rise to a § 1983 claim.

### ii.    Violation of Constitutional Right

In dispute, however, is whether Plaintiff's due process right to familial association has been violated.  Plaintiff argues that the basis for the violation of her constitutional right is the removal of Jane Doe from her and the continued detention of Jane Doe.  Opp'n at 11.  Plaintiff seeks damages to compensate for the loss of her daughter's companionship, and the mental distress she endured in trying to reunite with her daughter and her attempts to get her daughter removed from the Paredes home.  Id. at 12.  At oral argument, Defendants argued that the removal of Jane Doe from Plaintiff's custody occurred pursuant to a juvenile court order, and thus no due process right was violated.  Additionally, Defendants distinguish the cases Plaintiff relies on and argues they are not applicable in this instance.  Reply at 5-7.

To the extent Plaintiff's claim is based on the removal of Jane Doe from Plaintiff's custody, the court observes that "[g]overnment officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury."  Kirkpatrick v. Cnty. of Washoe, 792 F.3d 1184, 1187 (9th Cir. 2015).  Here, the record shows that on May 3, 2013, pursuant to California Welfare and Institutions Code § 300,[1] a Juvenile Dependency Petition was filed in the Santa Clara County Superior Court (Juvenile

---

[1] A §300 proceeding "allows [the juvenile court] to declare that a child is a dependent of the court

7

Division), along with an application for a protective custody warrant and supporting declaration signed by Caudillo. See Req. for Judicial Notice ("RJN"), Dkt. No. 16, Exh. A at ¶ 1; Dkt. No. 14-4 (filed under seal).[2]  On the same date, the juvenile court found there was reasonable cause to believe that Jane Doe should be placed into protective custody because

> the child's physical environment poses an imminent threat to the child's health or safety and there are no reasonable means by which the child can be protected without temporary removal from the physical custody of the parents or guardians.

Dkt. No. 14-4 at 23.  The court then issued a protective custody warrant. Id. at 24.  During the § 300 dependency proceedings, Plaintiff was represented by counsel. See RJN, Dkt. No. 16, Exh. B at 26.  Thus, it is undisputed that Defendants obtained prior judicial authorization before removing Jane Doe from Plaintiff's custody, and Plaintiff had the ability to challenge the removal.

At oral argument, Plaintiff challenged the veracity of Caudillo's declaration supporting the dependency petition and application for a protective custody warrant.  Plaintiff contended that Caudillo used false information and evidence to obtain the warrant, and pointed to several statements in Caudillo's declaration that are allegedly false.  Plaintiff argued that due process based on false evidence is not truly due process.

It appears that Plaintiff seeks this court to review the statements provided by Caudillo to the juvenile court and determine that the information presented to the juvenile court was false.  In essence, Plaintiff would have this court conduct an appellate review of the juvenile court's decision to issue the protective custody warrant.  This type of review, however, is barred by the

---

and to order removal of the child from the custody of the parents if the child has suffered or has a substantial risk of suffering abuse." Watson v. City of San Jose, ---F.3d---, 2015 WL 5202078, at *2 (9th Cir. Sept. 8, 2015).

[2] Defendants' RJN is GRANTED in its entirety.  See Fed. R. Evid. 201(b); see also Lee, 250 F.3d at 688 (noting that "[i]f the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them"); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (noting that courts "may take judicial notice of court filings and other matters of public record . . . [and] [w]hile some of these documents are filed under seal, they nonetheless are readily verifiable and, therefore, the proper subject of judicial notice").

Case No.: 5:15-cv-01691-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

1   Rooker-Feldman doctrine.  "[T]he 'de facto appeals' barred by Rooker-Feldman are those in

2   which a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court."

3   Vasquez v. Rackauckas, 734 F.3d 1025, 1036 (9th Cir. 2013) (internal quotations omitted).

4   Reviewing the veracity of Caudillo's statements upon which the juvenile court relied on to make

5   its decision would be a de facto appeal of the juvenile court's decision.  Instead, arguments

6   concerning false evidence are appropriately made to the state juvenile court that issued the warrant

7   for removal.

8          Plaintiff's reliance on Beltran v. Santa Clara County, 514 F.3d 906 (9th Cir. 2008), is

9   unpersuasive.  In Beltran, a social worker allegedly fabricated information that was included in the

10   dependency petition seeking removal of the child from the parents' custody.  Id. at 908.  The

11   dependency petition was denied and the child was returned to his parents.  Id.  Beltran is not

12   applicable to the instant case because the dependency petition in Beltran was denied and the child

13   was returned to his parents.  Here, however, Jane Doe properly remains under the custody of the

14   County; there is no indication, so far, that the dependency has terminated and that Jane Doe will

15   be returning to Plaintiff.  The Beltran decision focuses on the issue of immunity towards social

16   workers, and does not shed light into the current issue of standing.

17          Thus, given that there was a § 300 proceeding in which Plaintiff was a participant

18   represented by counsel, and Defendants sought and obtained judicial authorization prior to

19   removing Jane Doe from Plaintiff's custody, Plaintiff has not sufficiently pled a violation of her

20   due process right that is based on the removal.  Moreover, adhering to the Rooker-Feldman

21   doctrine, this court cannot conduct review of the juvenile court's decision to issue a warrant.

22          To the extent Plaintiff's claim is based on the placement of Jane Doe in the Paredes home,

23   Plaintiff has not provided a persuasive argument.  In her opposition brief, Plaintiff relied on three

24   decisions, but each is distinguishable from the instant case.  See Opp'n at 11-13.  First, in

25   Swartwood v. County of San Diego, --- F. Supp. 3d ---, 2014 WL 7778999 (S.D. Cal. Sept. 30,

26   2014), the county removed the children from their parents' home without a warrant and continued

27

28   Case No.: 5:15-cv-01691-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
     MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    to detain the children while the county investigated the circumstances that led to the child's injury.

2    Id. at *4-6.  After the county realized that the parents did not inflict the injury on the child, the

3    county decided not to proceed with a dependency petition to the juvenile court and returned the

4    children to the parents.  Id. at *8.  By contrast, in this case, Jane Doe was removed from Plaintiff's

5    custody pursuant to a court order and placed in foster care.  Since the placement of Jane Doe

6    occurred during § 300 proceedings supervised by a judge, her continued placement does not arise

7    to a constitutional violation.  Otherwise, all parents who lose custody of their child and whose

8    child is lawfully placed in foster care would have a constitutional violation claim against the

9    county.  Thus, the Swartwood decision does not help Plaintiff.

10          In Morrison v. Jones, 607 F.2d 1269 (9th Cir. 1979), a child was removed from his

11   mother's custody, and the county sent the child to live with his grandparents in Germany without

12   providing notice to the mother.  Id. at 1271-72.  As it pertains to standing, the Ninth Circuit stated:

13   "[The plaintiff] is asserting her interest as the mother of the child to preserve her access to the

14   child and her access to effective judicial relief, which, she alleges, the defendants' conduct

15   destroyed."  Id. at 1275.  Consequently, the Ninth Circuit held that the plaintiff had standing.  Id.

16   Here, Plaintiff had notice and opportunity to participate in the removal process, and had visitation

17   with Jane Doe during her placement in foster care.  While Krystal, as Jane Doe's foster parent,

18   failed to bring Jane Doe to certain visitation appointments, Plaintiff does not argue that Krystal's

19   conduct can be imputed to Defendants and thus constitute an intervention to Plaintiff's access to

20   her child.  Moreover, Plaintiff had—and continues to have—access to effective judicial relief in

21   the juvenile court where she could challenge the dependency proceedings and attempt to regain

22   custody of her child.  Given these distinctions, Morrison does not help Plaintiff.

23          Lastly, Kelson v. City of Springfield, 767 F.2d 651 (9th Cir. 1985), does not involve the

24   loss of custody of a child through dependency proceedings.  Instead, the child in Kelson

25   committed suicide at his school after being confronted by the police for having taken a gun to

26   school.  Id. at 653.  The child's parents filed a § 1983 action alleging a violation of their

27

28
10

1   fundamental parental rights in the context of the death of a child by a state agent.  Id. at 654-55.

2   Kelson stands for the proposition that "a parent has a constitutionally protected liberty interest in

3   the companionship and society of his or her child."  Id. at 655.  This liberty interest is violated

4   when the government interferes and infringes upon that interest.  Id. at 654.  The Ninth Circuit

5   notes:

6           State action that wrongfully kills one's child certainly interferes with
            fruition and fulfillment of the fundamental right to procreate.  A
7           parent cannot benefit from his constitutionally protected rights to
            supervise the upbringing, retain custody, or live in the same
8           residence with a child if state action unlawfully takes the child's life.

9   Id. at 655 n.4 (quoting Myres v. Rask, 602 F. Supp. 210, 213 (D. Colo. 1985)).

10          In the instant case, the removal of Jane Doe from Plaintiff's custody was lawfully

11  conducted pursuant to a valid court order that followed a process where Plaintiff had notice,

12  counsel, and the ability to participate.  While visitation was supervised and limited, Plaintiff had

13  the ability to exercise her visitations with her child.  The placement of Jane Doe in the Paredes

14  home did not deprive Plaintiff of the companionship of her child so as to constitute a

15  constitutional right violation.  The factual circumstances surrounding this action are tragic, and

16  pose concerns regarding the foster care system and the treatment of children in that system.

17  However, as it concerns the constitutional element of this action, Plaintiff does not have standing

18  to pursue a § 1983 claim on the basis of a due process violation.

19          Given that Plaintiff lacks standing to sue, it is not necessary to reach the issue of liability.

20  Accordingly, Plaintiff's § 1983 claim, and the municipal liability claim pursuant to Monell v.

21  Department of Social Services, 436 U.S. 658 (1978), are dismissed without prejudice and without

22  leave to amend.  See Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1051 (9th Cir. 2008)

23  ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by

24  amendment.").

25

26

27
                                                11
28

United States District Court
Northern District of California

**B.     Plaintiff's Remaining State Law Claims**

The dismissal of Plaintiff's sole claim arising under federal law raises the issue of continuing jurisdiction since there is no longer a federal question apparent from the face of the complaint.

The jurisdiction of federal courts is limited, and is only properly exercised over those cases raising federal questions or involving parties with diverse citizenship. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). "[O]nce a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Id. However, a district court may properly decline to exercise supplemental jurisdiction over state-law claims if such claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction" or if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Having determined that Plaintiff's § 1983 claim should be dismissed without leave to amend, all that remains are claims based in state law alleging the violation of state civil rights and alleging intentional infliction of emotional distress. Moreover, there can be no diversity jurisdiction due to the lack of diversity of citizenship. Therefore, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. Such claims will be remanded to state court for further proceedings.

**IV.     CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss IS GRANTED IN PART AND DENIED IN PART. The motion is GRANTED as to Plaintiff's first claim under 42 U.S.C. § 1983, and her second claim arising under Monell, which are DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND. The motion is DENIED in all other aspects.

/

/

/

Case No.: 5:15-cv-01691-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

1    The Clerk shall remand the remainder of this action to Santa Clara County Superior Court

2    and close the file.

3

4    **IT IS SO ORDERED.**

5    Dated: September 23, 2015

6



7    EDWARD J. DAVILA
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          13

28   Case No.: 5:15-cv-01691-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
     MOTION TO DISMISS