UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OLGA C.,<br><br>        Plaintiff,<br><br>   v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>        Defendants. | Case No. 5:15-cv-01691-EJD<br><br>**ORDER DENYING MOTION TO DISMISS AND/OR STRIKE**<br><br>Re: Dkt. No. 46 |

## I. INTRODUCTION

This action arises out of the removal of minor children, including Jane Doe, from their mother Plaintiff Olga C.'s custody. Olga C. ("Plaintiff") filed this action against Defendants County of Santa Clara ("County"), Santa Clara County Social Services Agency, Department of Family and Children Services, and social workers Janet Caudillo ("Caudillo") (erroneously sued as Janet Trujillo) and Darlene Sandoval ("Sandoval") (collectively, "Defendants") alleging constitutional rights violations under 42 U.S.C. § 1983 and related state claims. Presently before the Court is Defendants' motion to dismiss the §1983 claim on the grounds that it is barred by collateral estoppel. Pursuant to Fed.R.Civ.P. 12(f), Defendants also move to strike allegations regarding the injuries Jane Doe suffered while in foster care on the grounds that the allegations are irrelevant to Plaintiff's claims. For the reasons set forth below, Defendants' motion to dismiss and motion to strike are denied.

## II. BACKGROUND

Plaintiff is the mother of five children, including Jane Doe. Jerry Paredes, Sr. ("Jerry Sr.") is the father of Jane Doe. Jerry Sr. allegedly has a history of domestic violence and has been

convicted of child endangerment. Jerry Sr. is married to Deanne Paredes ("Deanne") and is the father of their two adult children, Krystal Paredes ("Krystal") and Jerry Paredes, Jr. ("Jerry Jr."). While Deanne, Krystal, and Jerry Jr. all live in the same home in San Jose, California (the "Paredes home"), it is unknown where Jerry Sr. lives. Nonetheless, Jerry Sr. is alleged to have frequented the Paredes home.

As of 2013, Plaintiff allegedly had sole legal and physical custody of Jane Doe while Jerry Sr. had unsupervised visitation. Plaintiff alleges that in April 2013, during an over-night visit, Jerry Sr. hit Jane Doe and gave her a blackened eye. Plaintiff photographed Jane Doe and contacted CPS. Plaintiff alleges that she met with Defendant Caudillo, told her about Jane Doe's blackened eye, and asked her to investigate. Caudillo, however, allegedly focused her investigation on Plaintiff, visited the children's school, and questioned the children about Plaintiff's conduct. Plaintiff alleges that Caudillo then presented her with papers to sign, and when Plaintiff refused to immediately sign the papers due to her limited English proficiency, the County removed Plaintiff's children from her home and placed them in foster care.

Plaintiff alleges that Defendants violated her constitutionally protected right to familial association by giving false and fabricated evidence and/or withholding exculpatory evidence during dependency proceedings to secure the removal of Jane Doe from her custody. More specifically, Plaintiff alleges that Defendant Caudillo (1) failed to note in investigative reports and reports to the court that it was Plaintiff who first called Child Protective Services to report suspected abuse by Jerry Sr.; (2) tried to coerce Plaintiff's children into saying that Plaintiff was not a good mother; (3) withheld evidence showing that Plaintiff was caring for her children; (4) failed to inform the court that Plaintiff suspected Jane Doe had been abused in the Paredes home; (5) failed to conduct an adequate investigation into the alleged abuse in the Paredes home; (6) falsely reported to the dependency court that Plaintiff had failed to protect her children from Jerry Jr.; and (7) failed to inform the court that there was no emergency warranting the removal of Plaintiff's children from her custody and care.

Case No.: 5:15-cv-01691-EJD
ORDER DENYING MOTION TO DISMISS AND/OR STRIKE
2

With respect to Defendant Sandoval, Plaintiff alleges that she regularly met with Sandoval to determine the conditions under which she might regain custody of her children. Plaintiff alleges that Sandoval frustrated Plaintiff's repeated attempts to comply with the conditions, especially the requirement to attend parenting classes. Plaintiff further alleges that Sandoval falsely advised the dependency court that Plaintiff had missed visits with her children; withheld evidence from the court regarding Jane Doe's deteriorating condition; and conducted superficial investigations of Jane Doe's physical abuse.

Plaintiff alleges that consistent with County policy, Jane Doe was placed in the Paredes home without the County conducting a background check of the members of that household. Plaintiff further alleges that 21-year-old Krystal was named Jane Doe's foster parent even though she was unfit for such a role.

In early 2014, during one of Plaintiff's supervised visitations, Plaintiff noticed that Jane Doe's body had cuts and bruises. Plaintiff allegedly reported this to Defendant Sandoval, but Sandoval dismissed Plaintiff's concerns. In March 2014, during a visitation with Plaintiff and her five children, the other foster parents in the room also noticed the cuts, bruises, swelling, and blackened eyes and marks on Jane Doe's body.

Plaintiff alleges that the limited investigation conducted by Defendants thereafter was negligent and incomplete because, among other things, Defendants simply accepted the explanations of Deanne and Krystal that Jane Doe's injuries were self-inflicted or the result of a cold and/or allergies.

Between March and June 2014, Plaintiff allegedly met with Sandoval numerous times to discuss her concerns of child abuse, but Sandoval allegedly took no action. In May 2014, Plaintiff was unable to see Jane Doe because Krystal failed to bring Jane Doe to the visits. On June 6, 2014, Plaintiff met with another social worker and pleaded for help. The social worker scheduled visitations, but Krystal again failed to bring Jane Doe. On June 10, 2014, the social worker visited the Paredes home. Upon observing suspicious circumstances, the social worker told Krystal to take Jane Doe to a doctor immediately. Hours later, Jane Doe was admitted to Valley Medical

1  Center where she was hospitalized for days.  Plaintiff alleges that Jane Doe had severe brain
2  hemorrhaging and was beaten beyond recognition.  Plaintiff also alleges that Jane Doe's eyes were
3  swollen shut, she had bite marks where chunks of flesh were missing, spike marks around her
4  neck, missing teeth, and cuts and bruises all over her body.  Jane Doe was subsequently removed
5  from the Paredes home and the Paredes family was criminally charged.  Plaintiff's First Amended
6  Complaint ("FAC") lists the following claims: (1) violation of civil rights, pursuant to 42 U.S.C. §
7  1983; (2) Monell-related claims; (3) violation of state civil rights; and (4) intentional infliction of
8  emotional distress.

9  Defendants contend that the Section 1983 claim is barred by collateral estoppel based on
10  dependency court proceedings and should be dismissed.  Defendants also contend that Plaintiff
11  lacks standing to assert any claims premised on Jane Doe's injuries, and therefore move to strike
12  allegations in the complaint relating to the abuse Jane Doe suffered.  See FAC at ¶¶17, 18, 20, 26,
13  27, 35.  Plaintiff argues that collateral estoppel does not apply because (1) the issues in this case
14  are not identical to any issues determined in the dependency court proceedings, and (2) the basis
15  of Plaintiff's Section 1983 claim was not actually litigated or decided in the dependency court
16  proceedings.  With respect to the motion to strike, Plaintiff clarifies that she is not seeking to
17  recover damages for Jane Doe's injuries.  Instead, Plaintiff seeks damages for the injuries she
18  suffered as a result of being separated from her children, including emotional distress caused by
19  witnessing the abuse to Jane Doe.

### III.  STANDARDS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of claims alleged in the complaint.  Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  The court must also construe the alleged facts in the light most favorable to the plaintiff.  See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014) (providing the court must "draw all reasonable inferences in favor of the nonmoving party" for

Case No.: 5:15-cv-01691-EJD
ORDER DENYING MOTION TO DISMISS AND/OR STRIKE
4

a Rule 12(b)(6) motion). Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

Pursuant to Fed.R.Civ.P. 12(f), a court may strike from the complaint any "redundant, immaterial, impertinent, or scandalous matter." The function of a Rule 12(f) motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010). A motion to strike will only be granted if "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc., 870 F.Supp.2d 1015 (D. Hi 2012); see also Oracle v. Micron Tech., Inc., 817 F.Supp.2d 1128, 1132 (N.D. Cal. 2011) ("A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action.").

## IV. DISCUSSION

The Full Faith and Credit Act, 28 U.S.C. §1738, requires a federal court to give a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was entered. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Collateral estoppel precludes the relitigation of issues that were actually tried and decided in prior proceedings. Lucido v. Superior Court, 51 Cal.3d 335, 341, 272 Cal.Rptr. 767 (1990). "Collateral estoppel applies when the issue sought to be precluded is identical to the issue decided in the former proceeding, the issue was actually litigated in the former proceeding, the issue was necessarily decided in the former proceeding, the decision in the former proceeding is final and on the merits, and the party against whom preclusion is sought is the same as or in privity with the party to the former proceeding." Id.; see also Hardwick v. County of Orange, No. SACV-13-1390-JLS, 2015 WL 13298081 (C.D. Cal. April 10, 2015); Kasdan v. County of Los Angeles, No. CV-12-06793 GAF, 2014 WL 6669354(C.D. Cal. Nov. 24, 2014); Anderson-Francois v. County of Sonoma, No. C-08-00724 WHA, 20009 WL 1458240 (N.D. Cal. May 22, 2009).

Plaintiff argues that collateral estoppel, also known as issue preclusion, does not apply because at no point in the dependency proceedings was the malfeasance or misfeasance of the social workers determined or actually litigated. The case of Watson v. County of Santa Clara, No. C-06-4029 RMW, 2010 WL 2077171 (N.D. Cal. May 20, 2010), which is factually similar to the present action, is instructive. In Watson, plaintiffs filed an action asserting various constitutional violations and state law torts against defendants arising out of the removal of three minor children from their parents' custody, the conduct of the dependency proceedings, and the length and circumstances of supervised visitation prior to the reunification of the children with their parents. On summary judgment, plaintiffs argued that collateral estoppel did not apply because they did not have a full and fair opportunity to litigate issues in the state court. The basis for plaintiffs' argument was that defendants committed perjury, submitted false documents, and concealed material facts and evidence in the dependency proceedings. The court rejected plaintiffs' argument as unsupported by the evidentiary record, which showed that the state court trial "conducted a lengthy, contested, jurisdictional hearing consuming 19 trial days, involving 27 witnesses and 85 trial exhibits." Watson, 2010 WL 2077171, at *4. Notably, the court also stated that collateral estoppel prohibits attack on a judgment on grounds that evidence was falsified, destroyed or suppressed. Watson, 2010 WL 2077171, at *3 (citing Cedars-Sinai Medical Center v. Superior Court, 18 Cal.4th 1, 10 (1998) (discussing caselaw forbidding collateral attack on a judgment on the ground that the evidence was falsified, concealed or suppressed)).

Although Defendants make a compelling argument for the applicability of collateral estoppel to Plaintiff's Section 1983 claim based upon Watson, supra, and Cedars-Sinai, supra, the Court is mindful of the Ninth Circuit's order reversing dismissal of Plaintiff's federal claims because Plaintiff's "federal claims may be saved by amendment," and remanding the case with instructions to grant Plaintiff leave to amend to assert a claim for extrinsic fraud in connection with the dependency proceedings. See Memorandum Decision attached as Ex. C to Defendants' Request for Judicial Notice. Plaintiff has now pled extrinsic fraud in connection with the dependency proceedings. Further development of the evidentiary record is necessary to determine

Case No.: 5:15-cv-01691-EJD
ORDER DENYING MOTION TO DISMISS AND/OR STRIKE
6

whether the elements of collateral estoppel are satisfied.  At the pleading stage, it cannot be determined whether the issues Defendants seek to preclude are identical to the issues decided in the dependency proceedings, whether the issues were actually litigated in the dependency proceedings, and whether the issues were necessarily decided in the dependency proceedings.

## V.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is DENIED.  Defendant's motion to strike is DENIED because Defendants have not established that the matters they seek to strike regarding Jane Doe's injuries "have no possible bearing on the subject matter of the litigation."  Illinois Nat'l Ins. Co., 817 F.Supp.2d at 1132.  Whether evidence of Jane Doe's injuries will ultimately be admissible at trial, however, is a separate issue that will have to be decided later in the proceedings.

**IT IS SO ORDERED.**

Dated:  October 17, 2017

_____

EDWARD J. DAVILA
United States District Judge